201 So.2d 159 (1967)
Mrs. Helen Reece THIBODAUX et al.
v.
POTOMAC INSURANCE COMPANY.
No. 7089.
Court of Appeal of Louisiana, First Circuit.
June 30, 1967.
*160 Monte J. Ducote, of Schoemann, Gomes & Ducote, New Orleans, for appellants.
Edmund McCollam, of Borowski & McMahon, Houma, for appellee.
*161 Before LOTTINGER, REID and SARTAIN, JJ.
REID, Judge.
Plaintiffs, Mrs. Helen Reece Thibodaux and Joseph E. Reece Jr., a minor duly emancipated by judgment of the 17th Judicial District Court, Parish of Terrebonne, have brought this suit against the Potomac Insurance Company for the sum of $1055.00 for Mrs. Thibodaux and the sum of $10,000.00 for Joseph E. Reece Jr., with legal interest from judicial demand and all costs.
This suit is brought for damages as a result of an automobile accident which happened on or about January 6, 1965 at approximately 7:18 P.M. This was a three car collision. Young Reece was driving a 1955 four door Ford sedan owned by Mrs. Thibodaux and was traveling east on Honduras Street in the city of Houma, Louisiana at a speed of about twenty-five miles an hour.
The Thibodaux car collided with a 1962 Pontiac, two door sedan driven by James E. Charles with the consent and permission of the owner, Donald Earl Charles, and was traveling south on Goode Street in the city of Houma.
Honduras Street was a right of way street over Goode Street and both streets were one way streets, Honduras Street going east and west and Goode Street going north and south. The intersection was controlled by a flashing light which was red on Goode Street and yellow for Honduras Street.
Plaintiff alleges that the accident was caused solely by the negligence of James E. Charles in the following respects:
1. Driving in a reckless and careless manner;
2. Failing to yield right of way;
3. Failing to observe the flashing red light;
4. In not seeing what he should have seen;
5. Traveling at an excessive rate of speed.
The Potomac Insurance Company filed an answer which was essentially a general denial, but admitting the issuance of an insurance policy to Donald L. Charles, the owner of the car involved in the accident, and further plead that the sole and proximate cause of the accident and resulting damages was the negligence of Joseph E. Reece Jr., a minor at the time of the accident which made him legally imputable to his mother, Mrs. Thibodaux, as follows:
1. Failing to maintain a proper control over the automobile which he was operating;
2. Failing to maintain a proper lookout;
3. In operating the automobile at an unreasonable rate of speed, under the existing circumstances;
4. Driving into the intersection without exercising due caution in view of the flashing signal light.
This case was consolidated for trial in the District Court with two other cases, namely Bernard Saintes, individually and on behalf of his minor daughter, Saintes, et al. v. General Accident, Fire and Life Insurance Corporation, Ltd., et al., La.App., 201 So.2d 167, and Mid-States Insurance Company et al. v. Potomac Insurance Company et al., La.App., 201 So.2d 168. The last two cases bear appeal numbers 7090 and 7091, respectively, on the docket of this Court.
The suit of Bernard Saintes, individually and on behalf of his minor daughter, Linda Saintes, and Mrs. Velma F. Saintes, his wife, was brought for the same accident and joined James E. Charles, driver of the Charles car as a co-defendant, seeking judgment in favor of Bernard Saintes, individually in the full sum of $5000.00 and on behalf of his daughter, a minor, Linda *162 Saintes in the full sum of $10,000.00 and for Mrs. Velma F. Saintes in the sum of $10,000.00. The Saintes car was a 1964 two door Pontiac sedan. Essentially the same acts of negligence and the same pleas were filed as in the Thibodaux case.
The Saintes prayed for judgment against the insurance company, Donald L. Charles, the owner of the car and James E. Charles, in solido. The answer was filed by the General Accident Fire and Life Insurance Company and Donald L. Charles. No answer was filed for James E. Charles.
Subsequently Donald L. Charles and Potomac Insurance Corporation filed a third party petition against Mrs. Saintes and Bernard Saintes acting on behalf of his minor daughter, Linda Saintes, seeking judgment in the event they were cast in the main suit, alleging negligence on the part of Mrs. Velma F. Saintes as a joint concurring proximate cause of the accident and seeking contribution against Bernard Saintes for whatever amount they may be held liable. Bernard Saintes and Mrs. Velma F. Saintes filed an answer to the third party petition, denying the allegations and conclusions therein.
The third suit, Appeal No. 7091 Mid-States Insurance, et al. v. Potomac Insurance Company, et al. was filed by Mid-States Insurance Company as insurer for Bernard Saintes and Bernard Saintes seeking judgment for the sum of $1674.03 in favor of the Mid-States Insurance Company and $100.00 in favor of Bernard Saintes and against Donald L. Charles, James E. Charles, and Potomac Insurance Company, jointly and in solido. Saintes paid the $100.00 deductible joined with his insurer Mid-States Insurance Company who was subrogated to the amount they paid for the repair of Saintes' car.
All three defendant, Donald E. Charles, James E. Charles and Potomac Insurance Company filed an answer setting forth the same defenses that were urged in the other two suits, and further pleading contributory negligence.
The Trial Court without assigning written reasons rendered judgment in the suit of Mrs. Thibodaux and Reece and against Potomac Insurance Company in the full sum of $750.00 for Mrs. Thibodaux and in favor of Joseph E. Reece Jr., and against Potomac Insurance Company in the full sum of $2950.00 with legal interest from the date of judicial demand until paid. He further fixed the fee of Dr. Wiley J. Picou, expert, at $50.00 and taxed same as costs, defendant to be cast for all costs.
In the Bernard Saintes suit, Appeal No. 7090, judgment was rendered in favor of Bernard Saintes, individually at $403.00; in favor of Bernard Saintes on behalf of his minor daughter, Linda Saintes in the full sum of $2250.00 and in favor of Mrs. Velma F. Saintes in the full sum of $1000.00, all against the Potomac Insurance Company and fixed the fee of the expert witness, Dr. William E. Barletta at $75.00 and taxed as cost, and the fee of Dr. Thomas A. Givens, expert witness in the sum of $50.00 and taxed as cost, defendant to pay all costs.
In the Mid-States Insurance case, Appeal No. 7091, judgment was rendered in favor of Mid-States Insurance Company and against the defendant James E. Charles and Potomac Insurance Company in the full sum of $1664.03 with legal interest from judicial demand and the defendants were cast for costs.
From these judgments Potomac Insurance Company and James E. Charles have brought this appeal to this Court.
No answer was filed in this appeal by any of the appellees although in the brief in the Saintes cases Mrs. Velma F. Saintes in her own behalf and Bernard Saintes on behalf of his minor daughter, Linda Saintes, asked for an increase in the award. However, since these parties have neither appealed nor answered the appeal herein this request for an increase cannot be considered.
*163 Appellants' brief sets forth the following alleged errors by the Trial Judge, to-wit:

"Specification of the alleged errors of the Trial Court
1. The District Court erred in its failure to find that plaintiffs, Joseph E. Reece, Jr. and Velma F. Saintes were guilty of negligence which contributed proximately to the involved accident and their respective personal injuries and damages.
2. The District Court erred in admitting into evidence, the testimony of Dr. William E. Barletta concerning the nature, extent and cost of dental treatment rendered Linda Saintes.
3. The District Court erred in awarding plaintiff Helen Reece Thibodaux the amount which she testified that she paid for her 1955 Ford sedan.
4. The District Court erred in its failure to award third-party plaintiff, Potomac Insurance Company one-half of the amount for which it was held liable to Bernard Saintes in his capacity as the administrator of the estate of his minor daughter, Linda Saintes.
5. The District Court erred in rendering a judgment against James E. Charles."
We will first take up the question of liability. The facts are pretty clear cut and show conclusively that James E. Charles was operating his brother, Donald Charles' 1962 Pontiac sedan on January 6, 1965. At approximately 7:00 P.M. he was traveling in a southerly direction on Goode Street in Houma, Louisiana. At about the same time James E. Reece was operating a 1955 Ford automobile owned by his mother, Mrs. Thibodaux and was proceeding easterly on Honduras Street. He was in the left hand inside traffic lane on Honduras Street. Mrs. Velma F. Saintes was operating a 1964 Pontiac two door sedan owned by her husband, Bernard Saintes, and was proceeding east on Honduras Street in the right hand east bound lane of said Honduras Street.
There is no question but what Honduras was the right of way street; it had a yellow or amber flashing light, which is a caution light. Goode Street was a less favored street and it had a flashing red light and in addition a stop sign.
The evidence shows conclusively that the Charles car and the Reece car collided and then the Charles car ricocheted and struck the Saintes car. The Saintes car was traveling east, side by side, with the Reece car and they were both attempting to cross Goode Street about the same time. The Charles car struck a utility pole and then stopped.
Officer Charles Vito of the Houma Police testified that he arrived at the scene of the accident about ten or fifteen minutes after it happened. He talked to James E. Charles at the hospital after the accident and Charles told him that he had run the red light and was traveling south at about 40 miles an hour. The speed limit on Goode Street was 35 miles an hour according to his report, but he stated he thought it was 25 miles an hour.
Charles himself remembered very little about the accident, and stated that he did not in fact know he had been in an accident.
Mrs. Saintes testified that she did not see the Charles car until it struck the Reece car, her vision being blocked by the Reece car which was traveling parallel with her, side by side.
Mr. Saintes testified that he was following his wife and saw the accident but did not see the Charles car until the accident. It was attempted to be brought out that one could see up Goode Street and in fact one of the defendant witnesses, Mr. C. J. Domangue testified that he saw the Charles car about 150 feet north of the intersection. However, Mr. Saintes, who was ahead of the Domangue car, did not see the Charles car. There are pictures in evidence of the *164 intersection and they show a fenced vacant lot on the north side of Honduras Street and there are some bushes along the fence on the east side of said lot. There is testimony in the record that this lot was only 50 feet wide.
According to one of the pictures the house just north of the vacant lot is very close to the street, and we do not see how anyone 150 feet west of the intersection on Honduras Street, where Mr. Domangue said that he was, could have possibly seen the Charles car.
With regard to the negligence of Mrs. Velma F. Saintes we do not see how under the circumstances she could possibly be charged with negligence. Her vision was blocked by the other car, she was driving parallel with it, and naturally assumed that as he was going to cross on a favored street, that the way was clear. We feel she acted as a normal and reasonable person would do under the circumstances. Of course, there was no negligence charged to the minor, Linda Saintes, who was a guest passenger in Mrs. Saintes' car.
With regard to the alleged negligence of Joseph E. Reece Jr. we do not feel that his negligence, if any, was the proximate cause of the accident. Reece testified that when he got to the intersection he saw a light flashing. He did not know whether it was a car parked or a car approaching, or what it was. He thought that he could cross the intersection before the car reached there. The appellant brought out that Reece in a statement made to the insurance adjuster shortly after the accident stated that he saw a car about a block away and he did not stop but went on across, thinking the other car would stop for the intersection as it appeared to be slowing down. Taking his statement as true and with no evidence to the contrary we feel that a man who saw a car a block away driving on a less favored street had a right to assume that this car would honor his right of way and come to stop permitting him to proceed in safety.
The appellant relies mainly on the following cases: Granata v. Simpson, La.App., 181 So.2d 791; State Farm Mutual Automobile Insurance Co. v. Merritt, La.App., 185 So.2d 832; Savoy v. Cooley, La.App., 144 So.2d 223.
We have no quarrel with the decision in these cases but we do not feel that the facts of these cases are applicable to the case at Bar. Each of these cases has to be governed by a peculiar set of facts applicable to each.
In Granata v. Simpson, supra, both plaintiff and defendant approached the intersection at a speed which made it apparent to witnesses that neither was going to stop and that an accident was going to happen. This case also is authority for the proposition that the driver on a favored street when confronted with a yellow light ordinarily would rely on a motorist approaching the intersection on the inferior street stopping as required by red light confronting him. If such motorist will not stop then the duty rests on the driver on the favored street to avoid an accident, if he can. (Emphasis ours)
In the instant case Charles did not see the Reece car at all. Reece saw a light which appeared to be slowing down a block away and he assumed that the driver of that car would yield to his right of way, and he had no reason, or no reason was offered, as to why he should not have been charged with knowledge that Charles was not going to honor his right of way.
The State Farm Mutual Automobile Insurance Company v. Merritt, is authority for the rule that where an intersection is controlled by red and yellow flashing lights motorist on right of way street who is confronted with yellow light must exercise caution and vigilance as he enters the intersection in order that he may ascertain whether he can proceed into the *165 intersection with safety. In this case the driver on the favored street was driving at a speed of at least fifteen miles per hour and was not observing the presence of south bound automobile about to enter (emphasis ours) an intersection on a less favored street, he failed to exercise the degree of caution required by a driver confronted with a flashing signal and his negligence was the proximate cause of the accident.
LSA-R.S. 32:234 sets out the duty of driver of motor vehicle when approaching flashing signals, such as the one used to control traffic at the intersection involved in this collision. It provides:
"A; Whenever an illuminated flashing red or yellow signal is used in a traffic sign or signal, it shall require obedience by vehicular traffic as follows:
(1) FLASHING RED (STOP SIGNAL)When a red lens is illuminated with rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest cross-walk at an intersection or at a limit line when marked, or, if none, then before entering the intersection, and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign.
(2) FLASHING YELLOW OR AMBER (CAUTION SIGNAL)When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through or past such signal only with caution."
In Savoy v. Cooley the facts in that case are that the driver on the favored street saw the approaching car some 150 feet distant whereupon she began to accelerate her car and was struck by the other vehicle while she was approximately in the center of the intersection. She saw that the approaching car was coming at a high rate of speed after she got into the intersection.
We realize that there is a thin line of demarcation as to whether the driver on the favored street, seeing a car approaching, acted with due and reasonable caution as a reasonable person would. Each case has to stand upon its own facts. In this case the only evidence brought out by the defendant was the testimony of Mr. Domangue that he saw the car approaching when he was 150 feet away. Charles saw nothing and did not even know he was in an accident. He did not know how fast he was going although the officer testified that he told him he was going about 40 miles an hour on the less favored street, in excess of the speed limit.
Since this is a question of fact as to whether the plaintiffs acted with reasonable caution or not, the finding of this fact by the Trial Judge is entitled to great weight and is not to be overruled unless manifestly erroneous or shows abuse of discretion. In this case we do not feel that the Trial Judge has abused his discretion, or is manifestly erroneous, and therefore we concur in his finding of liability.
The next error complained of by the appellants is the admitting into evidence by the Trial Court of the testimony of Dr. William E. Barletta concerning the nature, extent and cost of dental treatment rendered Linda Saintes. The facts show that at the pre-trial conference the Saintes' attorney gave a correct list of witnesses but did not include Dr. Barletta. He testified that the young lady or her mother did not tell him that she had seen Dr. Barletta until about ten days before the trial. He wrote to the Doctor for a report as soon as he learned of the examination and when he received it he mailed it to defendants' attorney. He had his secretary call Mr. Ducote to see if he had received the report and Mr. Ducote stated that he received the statement at about six o'clock the night before the trial. The Trial Court admittted the testimony under these circumstances and in this we see no error or abuse of his discretion.
With regard to the nature of Miss Saintes teeth injuries the facts show that *166 two upper central incisors were broken off and it was necesary to put caps on them. Another dentist had capped these teeth but Miss Saintes was not happy with them; they did not conform with the harmony of her mouth, the shade was a little bit too white, but mainly because they did not conform with the harmony of her mouth. Miss Saintes testified that her teeth were sensitive to anything hot or cold and that she had to chew on the side not being able to bite down on anything. While there is no specific allegation that the dentist was negligent, or did not perform his duty in the usual and customary manner we feel that under the circumstances Miss Saintes was justified in going to another dentist. A young girl, seventeen years of age, certainly desires to have her teeth as attractive as possible, as ugly teeth are a drawback to anyone's appearance. Had the caps been properly installed, or proper caps installed, we do not believe that the young lady would have had any complaint. Certainly where one has to chew on the side of the mouth and is discomforted by the fact that anything hot or cold causes pain is evidence that there is something wrong with the first capping job done on her teeth.
While appellant claims of paying the dental bill twice, paying two dentists for it, there is no evidence in the record of any judgment being awarded against them for the value of Dr. Barletta's expenses.
In this connection appellant relies on the case of Hudgens v. Mayeaux, La.App., 143 So.2d 606. This case held as follows:
"* * * And as to (b)without necessarily holding that the attending physician made a mistake (which the defendant-appellants attempted to provide by the theoretical opinions of radiologists examining the x-rays many months after the accident)it is likewise well settled that the tort-feasor is responsible for the personal injuries of the injured person following the tort, even though such injuries are aggravated by the negligent or unskilled treatment of the plaintiff's attending physician; such aggravation is regarded as a part of the immediate and direct damages naturally flowing from the original tort, rather than as resulting from an intervening cause."
We believe under the circumstances that the facts of the instant case are in line with the decision in the Hudgens v. Mayeaux case. There is no question but what the young lady's teeth situation was aggravated by the negligence or unskilled treatment of plaintiff's dentist and she is entitled to recover the cost of going to another dentist and having her teeth properly capped. She testified that she is perfectly satisfied with the capping job done by Dr. Barletta and she suffers no more of any of her previous complaints.
The next complaint of the appellant is in regard to the Lower Court awarding plaintiff Mrs. Helen Reece Thibodaux the amount she stated that she paid for a 1955 Ford sedan. The testimony and her bill of sale is in the record showing that Mrs. Thibodaux bought this car on April 7, 1964 for $219.00. She testified, and there is no evidence to the contrary, that the car was a complete wreck.
We believe that the case of Baremore v. Southern Farm Bureau Casualty Insurance Company, La.App., 147 So. 2d 58 is applicable to this case. The Baremore case holds that fixing damages of the nature herein involved is largely in the Trial Court's discretion and ordinarily will not be disturbed. The Trial Judge in attempting to resolve the uncertainties as to the value evidently valued the car, less salvage, was about $300.00, the amount required to repair it and allowed plaintiff to recover this amount. It does hold that the proper measure of damages where a motor vehicle is damaged in excess of its value and is not repaired is the market value of the vehicle at the time of the accident less any salvage value. While the *167 Judge gave no reason as to why he allowed this amount the testimony of Mrs. Thibodaux is undisputed and the Trial Judge in his discretion fixed the amount at $219.00 as the value of the car at the time of the accident, less the salvage value. There is no evidence in the record that there was any salvage at all, and defendants made no effort to rebut the testimony of Mrs. Thibodaux.
Appellant next complained that the Trial Court erred in its failure to award third party plaintiff, Potomac Insurance Company one-half of the amount for which it is held liable to Bernard Saintes, in his capacity as administrator of the estate of his minor daughter, Linda Saintes. We have already hereinabove held that Mrs. Saintes, the driver of the car in which Linda Saintes was riding, was not guilty of any negligence. Certainly her guest passenger, her minor daughter Linda Saintes, could not be held for any negligence. Even if Mrs. Saintes had been guilty of negligence this would not be attributable to her guest passenger, Linda. We hold that the Trial Judge was correct in this ruling.
The fifth and last error complained of by the appellant is the error of the District Court in rendering a judgment against James E. Charles. James E. Charles was the driver of the car involved in the accident, although he did not own it. The record reflects that in the Thibodaux case James E. Charles was not made party defendant and not served and was not cast into judgment. In the Saintes case the record discloses that Charles was not served though made a party to the suit, but the judgment is not against him. In the Mid-States Insurance Company case he was made a party to the suit but not served, however, answer was filed in his behalf by the Potomac Insurance Company's attorneys. In addition an appeal was taken by Charles in all three suits.
We believe that the judgment in this respect in Mid-States Insurance Company et al. v. Potomac Ins. Co., No. 7091 is correct, but in the other two cases, the Thibodaux case and the Saintes case, there is no judgment against Charles there was no necessity for an appeal.
This disposes of all the errors complained of by appellant and we fail to find any manifest error by the Trial Court.
For the foregoing reasons the judgment of the Lower Court is affirmed in all three cases. Separate judgments will have to be rendered in each case, although this decision sets forth the reasons for reaching the decision we have.
Affirmed.